# SUPREME JUDICIAL COURT

### FOR THE

## COUNTY OF NORFOLK, OCTOBER TERM 1835, AT DEDHAM.

PRESENT:

HON. LEMUEL SHAW, CHIEF JUSTICE,
HON. SAMUEL PUTNAM, ⎫
HON. SAMUEL S. WILDE, ⎬ JUSTICES.
HON. MARCUS MORTON, ⎭

---

## COMMONWEALTH *versus* JOHN WADE.

An indictment alleged that the defendant set fire, in the night, to a certain building of one N and one G, called a barn, and that by the burning of the barn, the dwelling-house of one B was burnt in the night time   The proof was, that G was the general owner of the barn; that a portion of it was in the occupation of N; tha by a verbal contract, the rest was appropriated to the accommodation of the horses of an unincorporated company, the proprietors of a line of stagecoaches running between Boston and Providence, and that G received the manure as his compensation for the use of this part of the barn ; that G was the agent of the company, receiving a salary; that he had the superintendence of this part of the barn, providing ostlers, hay, &c., the expenses being paid by the company; that he had nothing to do with any horses in the barn not belonging to the company; that he had, in the same manner, the care of the stables along the whole line, except one, which was owned by the company. It was *held*, that the company, and not G, was in the occupation of this part of the barn, and that the allegation that the barn was the building of N and G was not supported by the proof.

Whether in an indictment under *St.* 1804, *c.* 131, charging that the defendant set fire to a building and that by the burning of such building a dwellinghouse was burnt in the night time, it be necessary to state who was the owner or occupant of such building, or that it was the building *of another, quære.*

But if the indictment does allege that such building was the building of an individual, (naming him,) the allegation is material, being descriptive of the offence, and must be proved.

The prisoner having been put upon his trial on an indictment for setting fire to a barn of N and G, whereby a dwellinghouse was burnt in the night, and the Court being of opinion that the material allegation of the ownership of the barn was not sustained by the proof, the attorney general moved to enter a nolle prosequi, but it was *held*, that the prisoner was entitled to a verdict.

Two indictments charging the defendant with setting fire to a barn, whereby a dwellinghouse was burnt in the night, the one alleging it to be the barn of A and B, the other alleging it to be the barn of A and C, were *held*, not to be for the same offence.

In general, if a juror, upon his answers on the voir dire, stands indifferent between the parties, other evidence is not to be introduced to show that he is under a bias; but if a cause of challenge exists which could not be known to the juror, it forms an exception to the rule and may be proved by witnesses.

IN April 1834, an indictment was found, alleging that Wade, on October 29, 1832, in the night, at Dedham, " *a certain building of one Ebenezer Newhall and one Timothy Gay*, there situate, called a barn, feloniously &c. did set fire to and burn, and that by the kindling of said fire and by the burning of said barn the dwellinghouse of one James Bride, there also situate, was then and there, in the night time, feloniously &c. burnt and consumed." The prisoner pleaded not guilty, and at October term 1834, he was put upon his trial.

The jury being empannelled, *Austin*, Attorney-General, called witnesses in support of the indictment, from whose testimony it appeared, that Gay was the general owner of the dwellinghouse and of the barn and of a horse-shed by which they were connected together ; that he let the dwellinghouse and a part of the barn to Bride ; that Bride was in the occupation of the dwellinghouse as an inn ; that with Gay's consent, he transferred his right in the barn to Ebenezer *Newell*, (not *Newhall*,) and Newell paid his rent to Gay ; that Newell occupied this part of the barn for the purposes of a livery stable, making use of fourteen stalls, and more when he had occasion for more, the horses of travellers who stopped at the inn being taken care of by him ; that the rest of the barn was appropriated to the use of an unincorporated company, called the Citizens' Coach Company, who were the proprietors of a line of stagecoaches running between Boston and Providence ; that it was so appropriated by virtue of a verbal contract between the company and Gay, by which it was agreed that the company should use the barn for such of their horses as they

should choose to keep there, and in consideration t ereot Gay should have the manure ; that no definite time was fixed for the continuance of this contract ; that Gay was a member of the company, and likewise their agent, receiving a salary for his services ; that he had the care of that part of the barn which was not occupied by Newell ; that he bought and put in the hay for the company's horses, and drew orders on the treasurer of the company to pay for it ; that he hired the ostlers, and they were paid by the company ; that he had nothing to do with any horses in the barn, except those belonging to the company ; and that he had the care of all the stables on the line, (and which were not owned by him,) in the same manner as of this barn, except one which belonged to the company.

The Attorney-General having no further evidence that the building set on fire was the building of Newell and Gay, as alleged in the indictment, the prisoner's counsel, *Metcalf* and *F. O. Watts*, interposed an objection, that this allegation was not supported by the proof. They contended (independently of a supposed misnomer of *Newhall* for *Newell*) that it was necessary to aver in the indictment, that the building alleged to have been set on fire by the party accused, was the building *of another*, and to aver whose building it was ; that if such averments were not necessary, yet that here the ownership, or if not the ownership, the possession, was averred to be in Newell and Gay, and the averment being made, was material, inasmuch as it entered into the description of the offence, and must be proved. They cited *St.* 1804, *c.* 131, § 1, 2, 3 ; *Bloss* v. *Tobey*, 2 Pick. 320 ; Stephen on Pl. 419; Archb. Crim. Pl. 14, 19, 67 ; *The King* v. *Taylor*, 2 M'Nally on Evid. 605 ; *S. C.* 1 Leach, (3d edit.) 58 ; *Rex* v. *Durore*, 2 M'Nally on Evid. 501 ; *S. C.* 1 Leach, (3d edit.) 390 ; 3 Stark. Evid. 1530, 1533 ; 2 Russell on Crimes, 495, 949, (cites 2 East's P. C. 513, 1 Chit. Crim. Law, 215, *et seq.*,) 1677 ; 3 Chit. Crim. Law, 1095, 1097, 1108 ; *Woodward's case*, 1 Leach, (3d edit.) 287, note ; *Rex* v. *White*, 1 Leach, (3d edit.) 286 ; 2 East's P. C. 1034 ; *Rex* v. *Ball*, 1 Ryan & Moody's Cr. Cas. 30 ; *Rex* v. *March*, 1 Ryan & Moody's Cr. Cas. 282.

*Austin, contra,* said that the charge was for burning a *dwell-inghouse* of another in the night time ; that whether this was effected by setting fire to the prisoner's own building or to the building of another, was immaterial, and therefore the averment as to the ownership of the barn was surplusage ; 3 Stark. Evid. 1527, 1528, 1534, cites *Pye's case,* East's P. C. 785, and *Johnston's case,* East's P. C. 786 ; that if not surplusage, it was merely collateral matter, in regard to which less certainty is required, than in regard to the gist of the offence , Archb. Crim. Pl. 18 ; but that, however, the proof corresponded with the averment, for the barn was in the occupation of Gay and Newell, and the incendiary has no right to inquire into their title. *Rex* v. *Wallis,* 1 Ryan & Moody's Cr. Cas. 344.

The *Court,* after deliberation, pronounced their opinion to the following effect. We are called upon in a preliminary stage of the cause, to determine whether the averment in the indictment, that the barn set on fire was the building of Newell and Gay, has been proved by the evidence which has been introduced, or whether it is necessary to be proved. If it be necessary to prove it, the government must show that either the general property, or the occupancy, was in the persons named. As to the general property, the facts show that it was not in Gay and Newell, but in Gay alone. And as to the occupancy, it appears that a part of the building was let to Newell, not separated from the rest of the building, but designated for him, with liberty to use more occasionally ; and there can be no doubt that he was an occupant. But the other part, we think, was in the occupation, not of Gay, but of the Citizens' Coach Company. Gay describes himself as the servant of the company. He .had the manure as his compensation for permitting the company to make use of the barn, and he cannot be considered as any more in the occupation of this than of the other stables on the line. It was not necessary that the holding by the company should be for any fixed time. The arrangement was to last so long as it should be satisfactory to both parties, and so long the company were tenants at will. We think therefore that the jury could not be advised tha the allegation under consideration is sustained by the evidence

Then the question arises, whether this allegation may not be rejected as surplusage. Whether it be necessary, in an indictment founded on *St.* 1804, *c.* 131, § 1, to state the name of the owner of a building set on fire, by means of which the dwellinghouse is burnt, or to state that it was the building *of another*, we do not determine ; but an allegation of such ownership being here inserted, we think it material and not surplusage. It constitutes a part of the description of the offence, and must therefore be proved. This rule is derived from a consideration of the purposes of an indictment, namely, to inform the accused of the leading grounds of the charge and thereby enable him to make his defence ; to enable the court to pronounce the proper judgment affixed by the law to the combination of facts, as stated in the indictment ; and to enable the defendant to plead the conviction or acquittal in bar to another prosecution for the same offence.

After this decision the Attorney General moved to enter a *nolle prosequi* ; and he contended that the government might enter a *nolle prosequi*, as a matter of right. *Commonwealth* v *Wheeler*, 2 Mass. R. 172.

The counsel for the prisoner argued that he was entitled to a verdict ; that the failure was not in the indictment, but in the proof ; and that this prosecution did not fall within the principles of those cases in which the jury, in a capital trial, has been discharged of the cause without rendering a verdict. 1 Chit. Crim. Law, 479, 630 ; 4 Chit. Crim. Law, 318 ; *United States* v. *Perez*, 9 Wheat. 479 ; *People* v. *Goodwin*, 18 Johns. R. 187 ; *People* v. *Olcott*, 2 Johns. Cas. 302 ; *State* v. *Woodruff*, 2 Day, 504 ; *Anonymous*, 1 Virginia Cases, 139 ; *Commonwealth* v. *Bowden*, 9 Mass. R. 494.

*Per Curiam.* There are some stages of a trial in which the right to enter a *nolle prosequi* clearly ceases ; as after a verdict of manslaughter on an indictment for murder ; in others, a question might be made ; as after the evidence is closed, or after it has been summed up to the jury. In some cases, it should seem, the cause must be taken from the jury, of necessity ; as if the jury cannot agree, or if one of them is taken ill, so that he cannot proceed in the trial. Suppose the principal witness suddenly absconds, or is seized with a fit, after the jury are

empannelled, and so is unable to testify ; it seems proper, that in such cases the Court should have power at their discretion, to stop the trial.   Where the indictment is defective, the prisoner is not put in jeopardy, and a verdict would be nugatory. We do not however now decide what the Court would do in any supposed case of necessity, but confine ourselves to this particular case, and to this stage of it.   The prisoner is put upon his trial on an indictment for arson.   A material part of the facts in issue, is whether the barn was the building of Gay and Newell, as alleged in the indictment, and the evidence produced by the government will not warrant the jury in find ing that it was their building.   It is a case where there is no necessity, no unforeseen cause of delay, no accident, no mistake, no extraordinary exigence.   It is an ordinary case of a good indictment, in point of form, but a failure in the proof. And we think, therefore, that the prisoner is entitled to a verdict of acquittal.

The jury were instructed accordingly, and acquitted the prisoner.

After this acquittal Wade was again indicted for arson in setting fire to the same barn.   The indictment contained twelve counts.   The first four respectively charged the prisoner with setting fire directly to the dwellinghouses of James Bride, George Dixon, Mason Richards and Ebenezer Fisher.   The second four charged him with setting fire to "a certain building there situate, called a barn, which said building was not then and there owned or occupied by the said Wade," and then alleged respectively that by the burning of the barn the same dwellinghouses were burnt.   The third four charged him with setting fire to " a certain building, called a barn, of Ebenezer Newell " and about ninety other individuals named, (these other individuals being in fact the members of the Citizens Coach Company, but it was not so stated in the indictment,) and then alleged respectively that by the burning of the barn the same dwellinghouses were burnt.

To this indictment the prisoner pleaded in bar his acquittal on the former indictment, averring in his plea, " that the said burning said dwellinghouse of James Bride and of a building called a barn, of Ebenezer Newhall and Timothy Gay in

the same indictment specified and set forth, and supposed to be done and committed by him the said· John Wade, is the same identical burning as that named in all or any of the counts of the indictment to which he is now pleading, and supposed and alleged to have been done and committed by him the said John Wade, and not other and different." The Attorney General craved oyer of the record of the former acquittal, and demurred to the plea.

*Cushing,* for the prisoner, argued that the plea alleges the identity of the offences set forth in the two indictments, and that this allegation is admitted by the demurrer; that the offences are the same in law, both indictments being founded upon *St.* 1804, *c.* 131, § 1, and are the same in fact, the burning of the several dwellinghouses mentioned having been caused by the burning of the same barn; that the case of *Commonwealth* v. *Roby,* 12 Pick. 496, would not sustain this indictment, because there the record set forth upon oyer showed a different offence, both in law and in fact, and so controlled the admission in the demurrer, of the identity of the offences; that the same evidence would support this and the former indictment; that the prisoner had once been put in jeopardy, for the former indictment was good, but the prosecution failed for want of evidence, and he was not bound to answer to a new indictment merely varying the 'form of describing the offence.    2 East's P. C. 520; *Vandercomb's case,* 2 Leach, (3d edit.) 816.

The Attorney General relied on *Commonwealth* v. *Roby,* 12 Pick. 496.

The *Court,* after deliberation, said that the averment of property in the barn being material, and the fact being alleged differently in the two indictments, they were not for the same offence, in form or substance; that the same evidence which would support the averment, that the barn was the property of Newell and the members of the Citizens' Coach Company, would not support the averment that it was the barn of Newell and Gay; that as the plea professed to answer the whole indictment, and was not a good bar to all the counts, it could not on demurrer be a good bar to any of them; that as to the counts in the new indictment alleging the barn not to be the

34 *

property of the prisoner, this was not inconsistent with the averment in the former indictment, that it was the barn of Newell and Gay, and if the plea had been pleaded to those counts alone, and had averred that they were for the same offence, the demurrer might have been an admission of this averment, and the plea have been a good bar ; that the plea did not so aver, but only averred that the burning was the same, which might well be, and yet the offence not be the same.

The plea was therefore overruled, and the prisoner, being required to answer over, pleaded not guilty, and was put upon his trial.

In empannelling the jury, one of the jurors was inquired of upon oath, (pursuant to *St.* 1807, *c.* 140, § 9,) " whether he had formed or given any opinion, or was sensible of any particular interest or prejudice in the cause," and upon his answers he appeared to stand indifferent. The Attorney General then stated that the juror might find himself implicated by the testimony to be produced on the trial, and it could not be supposed that he would weigh such testimony with impartiality.

The *Court* observed, that it was the general intent of the statute to have a perfectly fair jury ; that in their opinion, the inquiries allowed by the statute to be made of a juror on his voir dire, were put by way of example ; that as a general rule, after putting a juror upon his voir dire, a want of impartiality is not to be proved by witnesses, but that where a distinct cause of challenge exists, which could not be known to the juror, it forms an exception to this rule.

The Court therefore permitted witnesses to be examined, and being of opinion that the evidence was such as would tend to bias the juror's mind, they said that in tenderness to the juror, as well as in justice to the parties, he ought not to be put upon the panel.